## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GUYMON BECKHAM,

                     **Plaintiff**,

v.

THE MONARCH CEMENT COMPANY,          **Case No. 23-1235-DDC**

                     **Defendant**

ACCIDENT FUND INSURANCE
COMPANY OF AMERICA,

                     **Intervenor**.

### MEMORANDUM AND ORDER

Plaintiff Guymon Beckham fell from a raised walkway on defendant's property while working in his capacity as a professional truck driver. He alleges that the fall resulted from defendant's negligence under a premises-liability theory. Defendant, The Monarch Cement Company, asks the court to decide as a matter of law that it didn't owe plaintiff a legal duty. Defendant presents two theories to avoid the reasonable care duty generally owed a business invitee: *First*, defendant didn't have actual or constructive notice of the dangerous condition leading to plaintiff's fall. *Second*, the dangerous condition was open and obvious, thus negating any duty that otherwise would inhere.

Neither theory succeeds. A reasonable jury could find that defendant's mode of operating its business excuses the actual or constructive notice requirement. And whether the dangerous condition was open and obvious is a fact question for the jury to decide. So, the court

denies defendant's Motion for Summary Judgment (Doc. 126).[1]  The court explains its

reasoning, below.  But first, it outlines the summary judgment facts governing this dispute.

## I.      Background[2]

The following facts are stipulated, uncontroverted, or, where controverted, are stated in

the light most favorable to plaintiff, the party opposing summary judgment.  *Scott v. Harris*, 550

U.S. 372, 378 (2007).

### Plaintiff's Employment and Training

Plaintiff began working as a professional truck driver for Sutton Trucking Company on

September 6, 2022.  Doc. 125 at 2 (PTO Stipulations ¶ 2.a.v.).  From September 6, 2022, until

September 12, 2022, he rode along with his Sutton Trucking co-driver/trainer, Doug Liles.  *Id.* at

3 (PTO Stipulations ¶ 2.a.vii.).  Mr. Liles instructed plaintiff on how to open and close the top

hatch of the pneumatic trailers they drove.  *Id.* (PTO Stipulations ¶ 2.a.viii.).  Mr. Liles also

trained plaintiff on how to use lid-opening and lid-closing stations during the week-long, ride-

along training.  *Id.* (PTO Stipulations ¶ 2.a.ix.).  Plaintiff first drove for Sutton Trucking on

September 12, 2022.  *Id.* (PTO Stipulations ¶ 2.a.x.).

### September 12, 2022, Incident

---

[1]      The opening sentence of plaintiff's response brief asserts that plaintiff "moves for cross-summary judgment[.]"  Doc. 130 at 1.  But nothing else in plaintiff's Response corresponds with this broad assertion.  Indeed, in its conclusion, the Response emphasizes and enumerates the sheer number of fact questions that plaintiff contends preclude summary judgment.  *Id.* at 31.  And the brief never asks the court to grant summary judgment in plaintiff's favor.  *See generally id.*  The court thus infers that the isolated cross-motion language was an inadvertent drafting error.  And even if its not, the court denies any such request because plaintiff hasn't submitted a properly supported summary judgment motion.

[2]      The parties dispute the admissibility of three categories of plaintiff's statements of fact:  contents and statements in the Mine Safety and Health Administration (MSHA) Inspection Summary Report; hypothetical questions asked of lay witnesses; and product literature from the Sam Carbis Company.  Doc. 138 at 2–6; Doc. 139 at 1–2.  And the parties submitted supplemental briefing on these admissibility issues.  *See generally* Doc. 138; Doc. 139.  But most of these statements of fact aren't material to the court's summary judgment ruling.  So, the court decides just those limited admissibility disputes that address material facts, as they arise, in this Order.

On that first day, plaintiff drove from the Sutton Trucking truck yard to defendant's property.  *Id.* (PTO Stipulations ¶¶ 2.a.x.–xi.).  Upon arriving, he pulled his truck up to defendant's lid-opening station and opened the hatch on top of his trailer without incident.  *Id.* (PTO Stipulations ¶ 2.a.xiii.).  He then pulled the truck into the center lane of six silos to have it loaded.  *Id.* (PTO Stipulations ¶ 2.a.xiv.).  Once loaded, plaintiff pulled the truck out of the silo area toward the lid-closing station.  *Id.* (PTO Stipulations ¶ 2.a.xv.).  As drivers approach the lid-closing station, a sign on the east side of the station instructs:  "Truck Drivers pull in as close to bumper guard as possible."  *Id.* (PTO Stipulations ¶ 2.a.xvi.).  To the south side of the lid-closing station is a 12" round bumper guard.  *Id.* (PTO Stipulations ¶ 2.a.xvii.).  The following photo depicts the lid-closing station, plaintiff's truck, and the bumper guard.



Doc. 130-12 at 1 (Ex. 12) (text and red arrows added by court).

After pulling into the lid-closing station, plaintiff and his trainer, Mr. Liles, exited the truck to check its position relative to the station.  Doc. 125 at 3–4 (PTO Stipulations ¶ 2.a.xviii.).  Painted lines—applied by other truck drivers—indicated the appropriate forward-back position

to align properly with the lid-closing station. Doc. 130-1 at 2, 16–17 (Liles Dep. 36:13–19;
121:17–122:1). Plaintiff then re-entered the truck and pulled it forward while Mr. Liles spotted
his forward-back position using the painted lines. *Id.* at 3 (Liles Dep. 45:9–22); Doc. 125 at 3–4
(PTO Stipulations ¶ 2.a.xviii.). Plaintiff exited the truck again, and both he and Mr. Liles walked
around to the front of the vehicle. *Id.* (PTO Stipulations ¶ 2.a.xviii.). Plaintiff and Mr. Liles
believed that the truck rested sufficiently close to the bumper guard. Doc. 130-1 at 10 (Liles
Dep. 114:10–21); Doc. 130-2 at 6–7 (Beckham Dep. 199:24–200:13). But the truck's alignment
was improper, positioned too far from the bumper guard. Doc. 127-2 at 24 (Liles Dep. 92:11–
21); Doc. 130-1 at 18 (Liles Dep. 125:3–10). No objective markers or lines indicated the truck's
improper alignment. *Id.* at 10–11 (Liles Dep. 114:18–115:15).

Plaintiff then climbed the tower for the lid-closing station. Doc. 125 at 3–4 (PTO
Stipulations ¶ 2.a.xviii.). At the top of the lid-closing station, signs instruct drivers on the use of
the safety gate and gangway system. *Id.* at 4 (PTO Stipulations ¶ 2.a.xix.). Plaintiff lowered the
gangway over his trailer, walked to the end of the gangway, and attempted to step across the gap
onto his truck. *Id.* (PTO Stipulations ¶ 2.a.xxi.). He stepped on the curved side of his truck,
slipped, and fell 12 feet onto the bumper guard below. *Id.*

### *Defendant's Practices*

When plaintiff fell, the gangway equipment was neither defective nor in disrepair. *Id.* at
5 (PTO Stipulations ¶ 2.a.xxxii.). Defendant routinely inspects, repairs, and replaces defective
equipment on the lid-closing station. *Id.* (PTO Stipulations ¶ 2.a.xxxiii.). The lid-closing station
is inspected twice weekly, and thoroughly inspected and documented once monthly. *Id.* (PTO
Stipulations ¶ 2.a.xxxiv.). Defendant's shipping department tracks the number of trucks that
pass through defendant's facility. *Id.* (PTO Stipulations ¶ 2.a.xxxv.). From January 1, 2016,

through August 31, 2022, 179,320 trucks passed through defendant's facility. *Id.* at 6 (PTO Stipulations ¶ 2.a.xliii.).

***Plaintiff's Suit***

Plaintiff alleges that defendant owed a duty to ensure trucks didn't align improperly at the lid-closing station. *Id.* at 18 (PTO ¶ 4.a.). He asserts that defendant acted negligently, breaching its duty by "failing to provide appropriate guidance measures and safeguards for aligning trucks/trailers at the lid closing station[.]" *Id.* at 19 (PTO ¶ 4.a.) And he alleges that defendant's negligence "caused or contributed to" plaintiff's fall. *Id.* Defendant moves for summary judgment, arguing that it didn't owe plaintiff the duty he alleges. Doc. 127 at 2. The summary judgment outcome thus turns on the question of duty.

## II.    Legal Standard

Summary judgment is appropriate where the moving party demonstrates there is "no genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard dictates that the court "view the evidence and make inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of

5

law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  Even if the non-moving party fails to respond adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law."  *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'"  *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671).  Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient."  *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut."  *Celotex*, 477 U.S. at 327.  Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1).

III.        Analysis

Plaintiff asserts a negligence claim based on defendant's role as proprietor of the premises.  Plaintiff alleges that defendant owed plaintiff a duty, under principles of premises liability, "to recognize the extreme hazard that results from trucks being improperly aligned at the lid closing station and take steps to eliminate it (or at least reduce it as much as is reasonable)."  Doc. 125 at 18–19.  Defendant posits two theories to contend that—under these circumstances—defendant didn't owe plaintiff the duty he asserts.  Doc. 127 at 2.  *First*, defendant argues that premises liability based on a dangerous condition—like the gap between the truck and the lid-closing station here—attaches when the proprietor had notice of the dangerous condition.  *Id.*  And, defendant argues, plaintiff hasn't adduced sufficient evidence for a reasonable jury to find defendant possessed the requisite actual or constructive notice.  *Id.* at 2–3.  The court calls this defense defendant's notice theory.  *Second*, defendant asserts, even if plaintiff establishes notice there's no duty under Kansas law to warn a business invitee of obvious and well-known—or open—dangers.  *Id.* at 3.  And the fall hazard here qualifies as just such a danger.  *Id.*  The court refers to this summary judgment defense as defendant's open-and-obvious theory.  The court addresses—and rejects—each theory in turn, below.

A.        Defendant's Notice Theory

1.        Governing Law

The parties agree that Kansas substantive law governs this negligence action.  Doc. 125 at 2 (PTO ¶ 1.d.).[3]  "To ascertain Kansas's substantive law, [the court] endeavor[s] to predict how

---

[3]        The court concurs.  In diversity cases like this one, the court "applies the forum state's choice-of-law rules to determine which state's substantive law governs a claim."  *Nordwald v. Brightlink Commc'ns, LLC*, 603 F. Supp. 3d 1030, 1040 (D. Kan. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  When a tort is at issue in a case, Kansas courts follow the rule of *lex loci delicti*, which requires that "the law of the state where the tort occurred governs the merits of the litigation."  *Anderson v. Com. Constr. Servs., Inc.*, 531 F.3d 1190, 1194 (10th Cir. 2008) (citing *Ling v.*

the Kansas Supreme Court would rule." *Gregory v. Creekstone Farms Premium Beef, LLC*, 728 F. App'x 824, 826 (10th Cir. 2018) (quotation cleaned up).  Four well-known elements comprise a negligence claim under Kansas law:  "a duty owed to the plaintiff; a breach of that duty; causation between the breach of duty and the injury to the plaintiff; and damages suffered by the plaintiff." *Granados v. Wilson*, 523 P.3d 501, 510 (Kan. 2023).  A premises-liability negligence claim, like the one plaintiff asserts here, requires the same four elements. *Corazzin v. Edward D. Jones & Co., L.P.*, 530 P.3d 445, 449 (Kan. Ct. App. 2023).  The first element—the existence of a legal duty—"is a question of law[.]" *Granados*, 523 P.3d at 510.  "If a court concludes that a defendant did not have a duty to act in a certain manner toward the plaintiff, then the defendant cannot be liable to the plaintiff for negligence." *Elstun v. Spangles, Inc.*, 217 P.3d 450, 453 (Kan. 2009).

"Under Kansas law, the duty owed by the owner of a business to a business invitee is to exercise reasonable care to keep the premises safe and to warn an invitee of dangers which the owner knows of by exercising reasonable care." *Wilson v. Wal-Mart Stores, Inc.*, No. 07-2263-JWL, 2008 WL 2622895, at *7 (D. Kan. June 30, 2008).  "The liability of a proprietor of a business is predicated upon his superior knowledge concerning dangerous conditions[.]" *Jackson v. K-Mart Corp.*, 840 P.2d 463, 465 (Kan. 1992) (quotation cleaned up).  As such, the proprietor must have "notice of the dangerous condition" that is "actual or constructive." *Id.* at

---

*Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985)).  The state where the tort occurred is "'that place where the last event necessary to impose liability took place.'" *Wingerd v. Kaabooworks Servs., LLC*, No. 18-CV-2024-JAR-KGG, 2019 WL 1171700, at *19 (D. Kan. Mar. 13, 2019) (quoting *Aiken v. Emp. Health Servs., Inc.*, 81 F.3d 172, 1996 WL 134933, at *2 (10th Cir. Mar. 23, 1996)).  Thus, Kansas courts typically consult "the place where the injury was sustained[.]" *Andy's Towing, Inc. v. Bulldog Bldg. Sys., Inc.*, No. 10-2354-JTM, 2011 WL 2433679, at *5 (D. Kan. June 14, 2011) (citing *Ling*, 703 P.2d at 735). Here, plaintiff sustained his injury in Kansas. *See* Doc. 1 at 2 (Compl. ¶ 3) (identifying defendant as operating in Kansas and defendant's address as Humboldt, Kansas).  So, Kansas law applies.

465, 467 (quotation cleaned up).  In other words, "[l]iability does not attach . . . if the plaintiff is unable to show that the defendant had actual knowledge of the condition or that the condition had existed for a length of time that in the exercise of ordinary care the landowner should have discovered it."  *Crowe v. True's IGA, LLP*, 85 P.3d 1261, 1265 (Kan. Ct. App. 2004).

"Two exceptions exist, however, to the rule requiring proof of notice of a dangerous condition:  (1) the dangerous condition was created or maintained by the defendant or by those for whom it was responsible; or (2) the 'mode-of-operation' doctrine applies."  *Kimes v. Unified Sch. Dist. No. 480*, 934 F. Supp. 1275, 1280 (D. Kan. 1996) (internal citation omitted) (discussing Kansas law).

Here, defendant contends that plaintiff hasn't adduced evidence sufficient to demonstrate notice.  Doc. 127 at 11.  Defendant argues that it didn't possess actual or constructive notice of the position of plaintiff's truck when the fall occurred.  *Id.*  According to defendant, plaintiff's claim theorizes that:  The truck's alignment created the dangerous condition—the gap plaintiff fell through.  *Id.*  Defendant never had notice of the truck's improper position before plaintiff fell.  Nor had enough time passed between the misaligning of the truck and plaintiff's fall to provide defendant with constructive notice.  *Id.* at 11–12.  And without such actual or constructive notice, liability for a dangerous condition doesn't attach to a proprietor.

In response, plaintiff argues, first, that defendant had actual and constructive notice.  Doc. 130 at 21–24.  Plaintiff also invokes, alternatively, both exceptions which excuse the notice requirement.  *Id.* at 24–25.  Because the court finds the second of these exceptions—the mode-of-operation doctrine—viable, it denies defendant summary judgment under a notice theory.  To explain its conclusion, the court skips straight to the second exception, below.

### 2.    Mode-of-Operation Exception

9

Recall that traditional Kansas premises-liability law requires plaintiffs to show actual or constructive notice of a dangerous condition to hold a proprietor liable. *Miller v. Dollar Gen. Corp.*, No. 22-CV-1137-JAR, 2023 WL 2967940, at *4 (D. Kan. Apr. 17, 2023). But in *Jackson v. K-Mart Corporation*, the Kansas Supreme Court expressly adopted the "mode-of-operation rule." 840 P.2d at 470. Under this rule, "based on the mode of operation, the proprietor could reasonably foresee that the dangerous condition would regularly occur." *Id.* Where the mode-of-operation rule applies, a plaintiff needn't establish actual or constructive notice to hold a proprietor liable for a dangerous condition caused by a third party. *Id.* That's so because instead of focusing on "the events surrounding plaintiff's injury"—as the traditional notice requirement contemplates—the mode-of-operation rule "focuses primarily on the proprietor's mode of operating the business[.]" *Id.* Specifically, the rule evaluates whether the proprietor has adopted "a mode of operation where a patron's carelessness should be anticipated and the proprietor fails to use reasonable measures commensurate with the risk involved to discover the condition and remove it." *Id.* (quotation cleaned up). In other words, the mode-of-operation rule "allows an injured customer to recover due to a condition inherent in the way the store is operated." *Wagoner v. Dollar Gen. Corp.*, 955 F. Supp. 2d 1220, 1225 (D. Kan. 2013) (quotation cleaned up).

In *Jackson*, for example, K-Mart operated an in-store cafeteria, where it sold drinks. 840 P.2d at 464. Nothing required patrons to consume those drinks in a confined area. *Id.* Plaintiff slipped on avocado juice that a child had spilled inside the store, but outside the cafeteria. *Id.* The Kansas Supreme Court determined that K-Mart's policy and practice of allowing customers to take beverages to other parts of the store may have made the dangerous condition leading to plaintiff's fall reasonably foreseeable. *Id.* at 470. So, the Kansas Supreme Court affirmed the

appellate court's decision to remand for trial, identifying two lingering fact questions: "whether K-Mart could reasonably foresee that customers would regularly spill beverages on the floor and, if so, whether K-Mart failed to exercise reasonable care under the circumstances." *Id.*

Kansas courts "generally limit the mode of operation doctrine to self-service operations." *Wagoner*, 955 F. Supp. 2d at 1225 (citing *Hembree v. Wal-Mart of Kan.*, 35 P.3d 925, 928 (Kan. Ct. App. 2001)). Courts look to a proprietor's "operation, policies, customs or practices" to evaluate whether any "specific method in which the business conducts itself, that is, the nature of the business establishment" creates a foreseeable risk of danger. *Id.* at 1226. In *Hembree v. Wal-Mart of Kansas*, for example, the Kansas Court of Appeals refused to apply the mode-of-operation rule where plaintiff sued Wal-Mart after slipping on a white, creamy substance. 35 P.3d at 926, 928. The appellate court determined that Wal-Mart's mode of operation—inviting people to pick up and carry items around the store—was neither unique nor "created a situation in which dangerous conditions could regularly occur." *Id.* at 928. In a similar premises-liability case, where plaintiff slipped and fell on liquid soap at a Dollar General store, our court focused on whether customers "were invited or expected to open sealed containers in the store[.]" *Miller*, 2023 WL 2967940, at *2, 5. Finding no record evidence that defendants "adopted a particular mode of operation that encouraged or permitted customers to open sealed bottles of liquid in the store or any evidence that [d]efendants were even aware that customers opened sealed bottles on occasion[,]" our court held that—without evidence of such encouraging or permitting—no reasonable juror could find that the mode-of-operation rule applies. *Id.* at *4–5.

Here, the evidence in the record leads to the opposite conclusion. A reasonable jury could find that defendant's specific method of conducting business creates a foreseeable risk of danger. Defendant both invites and expects truck drivers to align their trucks at the lid-closing

station. The parties stipulate that a sign explicitly instructs drivers as they pull out of the silo loading area to "pull in as close to bumper guard as possible." Doc. 125 at 3 (PTO Stipulations ¶ 2.a.xvi.). And other signage instructs drivers how to use the gangway system at the top of lid-closing station. *Id.* at 4 (PTO Stipulations ¶ 2.a.xix.). So, defendant's mode of operation expressly involves a self-service setup requiring a patron to align a truck properly and then access the truck's roof using a gangway 12 feet above the ground. And its uncontroverted that the truck's improper alignment in this case created the dangerous gap where plaintiff fell. Doc. 127-2 at 24 (Liles Dep. 92:11–21); Doc. 130-1 at 18 (Liles Dep. 125:3–10). These facts create a triable issue: Did defendant adopt "a mode of operation where a patron's carelessness should be anticipated"? *Jackson*, 840 P.2d at 470 (quotation cleaned up).

Trying to avoid this result, defendant homes in on the mode of operation's regularity requirement. *See* Doc. 127 at 13. Recall that, for this exception to apply, the Kansas Supreme Court has specified that the proprietor's mode of operation must engender reasonable foreseeability that "the dangerous condition would *regularly* occur." *Jackson*, 840 P.2d at 470 (emphasis added). Defendant argues that there's "no evidence in this case to suggest that the misalignment of trucks/trailers creating a dangerous condition is something that *regularly* occurred on [defendant's] property." Doc. 127 at 13 (emphasis in original). In support, defendant invokes the parties' stipulation that 179,320 trucks used the lid-opening/closing station on defendant's premises between January 1, 2016 and August 31, 2022. *Id.*; *see* Doc. 125 at 6 (PTO Stipulations ¶ 2.a.xliii.). Defendant also adduces evidence—which plaintiff never controverts—that no other driver has fallen from a lid-opening or closing station on defendant's premises. Doc. 127-8 at 4 (Morris Dep. 15:3–7); Doc. 127-9 at 21 (Bilby Dep. 83:20–24); *see*

*also* Doc. 127 at 7 (defendant's uncontroverted fact ¶ 35); Doc. 130 at 7 (identifying defendant's fact ¶ 35 as uncontroverted).

So, it's uncontroverted that an accident like plaintiff's hasn't happened on defendant's premises before, even though a high volume of trucks had used the lid-closing station. Thus, defendant contends, the mode-of-operation exception can't apply absent evidence of "other falls or close calls involving misaligned vehicles[.]" Doc. 133 at 15. To be sure, facts establishing that no similar incidents have occurred are probative when evaluating defendant's ability reasonably to foresee a dangerous condition arising. But those facts aren't legally dispositive. *See Axelrod v. Cinemark Holdings, Inc.*, 65 F. Supp. 3d 1093, 1100 (D. Colo. 2014) ("Simply because something has not yet happened does not mean that its happening is not foreseeable.").

Plaintiff, for his part, adduces evidence from which a reasonable jury could infer that drivers misaligned trucks at the lid-closing station with some frequency. The parties stipulated that plaintiff and Doug Liles—plaintiff's co-driver/trainer—both checked the truck's alignment after plaintiff had pulled the truck into the lid-closing station. Doc. 125 at 3–4 (PTO Stipulations ¶ 2.a.xviii.). And, realizing the truck's forward-backward position was improperly aligned, plaintiff pulled the truck further forward. *Id.* Mr. Liles testified that—despite their check for proper positioning—he didn't have plaintiff move the truck closer to the bumper guard because he "thought it was going to be fine." Doc. 130-1 at 5 (Liles Dep. 89:1–9). When asked why he thought so, Mr. Liles explained that the truck's tires lined up with the tire tracks from other trucks who'd used the station before plaintiff. *Id.* And he referenced a picture of plaintiff's truck's tires stopped on other trucks' tire tracks. *Id.* Plaintiff attached that picture to his Response—a photograph showing the position of plaintiff's truck relative to the other tire tracks. Doc. 130-12 (Pl. Ex. 12).



*Id.* (text and red arrows added by court).  While plaintiff's truck doesn't sit as close to the

bumper guard as some of the tire tracks in the photograph, it does appear to overlap other tire

tracks.  This overlap could lead a reasonable jury to infer that other drivers had aligned their

trucks at a similar distance from the bumper guard as plaintiff did.  A factfinder also could infer

that, if plaintiff's trainer concluded the truck's proximity to the bumper guard sufficed, other

trainers and drivers could do the same.[4]  So, viewing the facts in the light most favorable to

---

[4]      Plaintiff also invoked the following statement to support his theory that trucks regularly misaligned on defendant's premises:  "approximately 1 in 60 trucks has to realign at the closing station for proper alignment."  Doc. 130 at 27.  Plaintiff extracted this statement from documents included in his Exhibit 3—which plaintiff describes as the MSHA Investigation Report.  *See id.*; *see also* Doc. 130-3 at 24 (Pl. Ex. 3).  Defendant objects to this fact as inadmissible hearsay.  Doc. 133 at 5; Doc. 139 at 4–5. Plaintiff argues that the MSHA Investigation Report is admissible under the public-records exception to hearsay, found in Fed. R. Evid. 803(8).  Doc. 138 at 3.  That's neither here nor there, defendant responds. Doc. 139 at 4.  Even if the report itself is admissible under Rule 803(8), the statement within it was made by an unknown declarant and offered for the truth of the matter asserted.  So, there's two levels of hearsay and the statement needs its own hearsay exception.  *Id.*  Plaintiff offers none.  *Id.*

        Defendant is right.  "Reports otherwise admissible under Rule 803(8) may not contain double hearsay, that is, recordation of otherwise inadmissible hearsay by the maker of the report. . . . Specifically,

plaintiff, a reasonable jury could infer that the dangerous condition—*i.e.*, the gap—arises with some frequency because of defendant's business mode. Given this showing, the question of the dangerous condition's reasonable foreseeability is best left for the trier of fact to decide. *See Jackson*, 840 P.2d at 470 (identifying question of reasonable foreseeability under mode-of-operation analysis as a fact question); *see also Hammond v. San Lo Leyte VFW Post #7515*, 466 P.3d 886, 891 (Kan. 2020) ("Whether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact. Only when reasonable persons could arrive at but one conclusion may the court determine the question as a matter of law." (quotation cleaned up)).

Defendant's regularity argument thus fails to preclude the mode-of-operation rule here. And so, the court denies summary judgment on defendant's actual or constructive notice theory. Plaintiff needn't demonstrate actual or constructive notice where the mode-of-operation rule applies. And a reasonable jury could find the rule applies here because the self-service nature of defendant's business mode invites and expects truck drivers to align their own trucks and thus—potentially—leave too wide of a gap between truck and lid-closing station. Defendant's regularity argument to avoid the mode-of-operation rule doesn't get any traction in light of Mr. Liles's testimony and the tire tracks photograph. Plaintiff thus has adduced sufficient facts to create a triable issue about the reasonable foreseeability of the dangerous condition. The court addresses defendant's second summary judgment theory, next.

### B.  Defendant's Open-and-Obvious Theory

---

the dictation of statements made by others . . . are inadmissible." *Amos v. W.L. Plastics, Inc.*, No. 07-CV-49 TS, 2010 WL 257267, at *2 (D. Utah Jan. 19, 2010) (quotation cleaned up). The statement plaintiff invokes here is a statement made by another—whose name is redacted—that's recorded in the MHSA documents. *See* Doc. 130-3 at 24 (Ex. 3). Without its own hearsay exception, this statement within the 803(8) public record is inadmissible.

Defendant contends that, even if plaintiff can establish—or escape—the notice requirement, defendant still didn't owe plaintiff the duty he alleges. Doc. 127 at 3. That's so, defendant asserts, because the dangerous condition was open and obvious. *Id.* And, under Kansas law, no duty inheres to the proprietor where the danger is open and obvious. *Id.* Plaintiff responds that the question of an open-and-obvious danger is a fact question the jury must resolve. Doc. 130 at 29. And he argues that the summary judgment facts suffice for a reasonable factfinder to conclude that plaintiff didn't realize or appreciate the probability and gravity of the threatened harm. *Id.* So, plaintiff asserts, by entering summary judgment on this theory, the court would "usurp the role of the jury[.]" *Id.* Plaintiff has the better of this argument.[5]

As already discussed, Kansas's premises-liability principles provide that a proprietor owes all invitees "a duty of reasonable care under the circumstances, including a duty to warn of any dangerous condition." *Herrell v. Nat'l Beef Packing Co., LLC*, 259 P.3d 663, 675 (Kan. 2011). But "landowners have no duty to protect against open and obvious dangers." *Manley v. Hallbauer*, 423 P.3d 480, 487 (Kan. 2018). That's so because "individuals have a responsibility to protect themselves from such conditions." *Id.* Kansas law utilizes "an objective test to determine whether a danger is known and obvious." *Wellhausen v. Univ. of Kan.*, 189 P.3d 1181, 1184 (Kan. Ct. App. 2008) (citing Restatement (Second) of Torts § 343A cmt. b). This test asks "whether a reasonable person in [plaintiff's] position—exercising ordinary perception, intelligence, and judgment—would have noticed . . . the risk of danger[.]" *Walker v. Mustang*

---

[5]    Plaintiff also argues that—even if the danger is open and obvious—an exception applies which precludes summary judgment: a proprietor still has a duty to minimize the risk of an open-and-obvious danger where the proprietor might expect an invitee's distraction, forgetfulness, or failure to protect against the danger. Doc. 130 at 30. Because the court concludes summary judgment is inappropriate on the open-and-obvious question, it needn't reach this exception to the open-and-obvious rule.

*Enters., Inc.*, 376 P.3d 96, 2016 WL 3570483, at *5 (Kan. Ct. App. July 1, 2016). "Knowledge

of the dangerous condition may be imputed and need not be actual knowledge." *Bonnette v.*

*Triple D Auto Parts, Inc.*, 409 P.3d 865, 871 (Kan. Ct. App. 2017).

 "Most courts . . . treat[] the existence of an open and obvious danger as a factual issue."

*Gregory*, 728 F. App'x at 826 (collecting cases). And the Kansas Court of Appeals has observed

that "deciding whether a particular condition constitutes a 'known or obvious' danger is

generally a factual question reserved for the jury." *Walker*, 2016 WL 3570483, at *3. What's

more, our Circuit has predicted albeit in an unpublished opinion, that "the Kansas Supreme Court

would regard the existence of an open and obvious danger as a question of fact." *Gregory*, 728

F. App'x at 827.

 Two cases relied on by the parties are instructive here. *First*, defendant invokes

*Wellhausen v. University of Kansas*, 189 P.3d 1181. Doc. 133 at 17. In *Wellhausen*, a student

lived on the seventh floor of a university dormitory. 189 P.3d at 1182. While inebriated, the

student climbed through his room's narrow window to access a ledge on which he could smoke a

cigarette. *Id.* He fell from the ledge 50 feet to the ground below and died. *Id.* His parents sued

the university, alleging that the ledge presented a dangerous condition the university had a duty

to warn about or correct. *Id.* at 1183. The Kansas Court of Appeals concluded that the danger

facing the student was known and obvious, sparing the university any duty to warn. *Id.* at 1184.

The appellate court concluded that, even if the student lacked actual knowledge of the danger,

"he had reason to know of the open and obvious danger which might result from climbing out of

a seventh-floor dormitory room window in order to stand upon a 2-foot-wide ledge several feet

below the window." *Id.* So, the Kansas Court of Appeals affirmed the district court's grant of

summary judgment in favor of the university. *Id.* at 1182.

*Wellhausen* suggests that a court properly could conclude at summary judgment that the danger of falling from a height is an open and obvious one—defendant's argument here.  But the Tenth Circuit's holding in *Gregory v. Creekstone Farms* complicates that conclusion.  728 F. App'x 824.

*Second*, in *Gregory*, the district court awarded summary judgment to the defendant proprietor in a premises-liability case.  *Id.* at 824–25.  The proprietor owned a meat processing plant that received cattle deliveries into two cattle pens.  *Id.* at 825.  Plaintiff's son arrived with a cattle delivery and—finding both pens already full—entered the pens to help clear the cattle.  *Id.* The east cattle pen included a "blind alley" such that the cattle might not see a path to exit the pen and might feel trapped.  *Id.*  While plaintiff's son was positioned behind the cattle in the east pen, one cow turned and rushed him, causing the son's death.  *Id.*  The district court determined that the danger from cattle is open and obvious and granted summary judgment in defendant's favor.  *Id.*  The Circuit reversed, reasoning that the district court had focused solely on the cattle and overlooked the significance of the blind alley.  *Id.*  In reaching its *Gregory* conclusion, the Circuit cautioned against defining a danger "too broadly" without considering whether "the entirety of the danger . . . was open and obvious."  *Id.* at 828.  Because the blind alley could have "unknowingly exacerbated" the danger, a factfinder reasonably could infer that plaintiff's son "had not recognized the probability and gravity of the danger."  *Id.*

Applying *Wellhausen* and *Gregory* to the case at hand, the court heeds the Circuit's warning about defining a danger "too broadly."  *Id.*  It thus hesitates to equate plaintiff's danger of falling through the gap with *Wellhausen*'s danger of falling from an open ledge.  In *Wellhausen*, nothing mitigated or aggravated the probability of a seven-story fall—a danger easily ascertained by a reasonable person exercising ordinary perception, intelligence, and

judgment.  That is, a reasonable person could appreciate the entirety of the open-ledge danger because nothing served to alleviate or exacerbate that danger.  But the plaintiff in the current case didn't stand atop an unadulterated ledge.  The lid-closing station served as a mechanism to help plaintiff navigate the 12-foot height.  This mechanism, and the gangway it employed, thus functioned to mitigate the danger of falling.  A reasonable jury could find, therefore, that the mechanism made the risk of falling less apparent than falling from an open ledge to a person exercising ordinary perception, intelligence and judgment.  In short, the court isn't persuaded that the *Wellhausen* holding fits the facts here.

*Gregory*, in contrast, aligns more closely with this case.  That's so because, in *Gregory*, the blind alley limited a reasonable person's ability to evaluate the entirety of the danger accurately.  The blind alley exacerbated the danger, potentially throwing off a reasonable person's calculation.  In a similar fashion, a reasonable jury could find that the lid-closing station here shifts the open-and-obvious-danger determination.  This mechanism may provide a sense of safety and security that an open ledge wouldn't provide.  So, using such a mechanism could alter a reasonable person's perception and judgment when that reasonable person evaluated the probability of falling.  A trier of fact thus could find that a person in plaintiff's position wouldn't appreciate the danger's probability and gravity, precluding an open-and-obvious finding. Following *Gregory*'s lead, therefore, the court concludes it should reserve the open-and-obvious question for the jury—as many other courts have done.  *See, e.g.*, *Eickhoff v. Scannell Props. #516, LLC*, No. 24-2234-KHV, 2025 WL 2735535, at *1 (D. Kan. Sept. 25, 2025) (denying summary judgment and recognizing *Gregory*'s conclusion that "fact question whether danger was 'open and obvious' generally reserved for jury"); *Powell v. Captain D's, LLC*, No. 23-2281-JWB, 2025 WL 548430, at *1 (D. Kan. Feb. 19, 2025) (same); *Sasser v. Walmart, Inc.*, No. 21-

CIV-125-RAW, 2023 WL 9751411, at *1 (E.D. Okla. Aug. 2, 2023) (same); *Curtis v. Viega, Inc.*, No. 21-1010-EFM, 2022 WL 218706, at *6 (D. Kan. Jan. 25, 2022) (same).

## IV.        Conclusion

The court rejects both of defendant's theories designed to establish—as a matter of law—that defendant didn't owe plaintiff (as a business invitee) a duty of reasonable care.  Defendant's notice theory fails because a reasonable jury could find that defendant operates its business in a mode that excuses the notice requirement.  And defendant's open-and-obvious theory fails because whether a danger is open and obvious is typically a fact question for the jury.  Here, a reasonable jury could find that the probability and gravity of the threatened harm wasn't evident given the mitigating mechanism of the lid-closing station and gangway system.  The court thus denies summary judgment to defendant.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant The Monarch Cement Company's Motion for Summary Judgment (Doc. 126) is denied.

**IT IS SO ORDERED.**

**Dated this 22nd day of December, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

20